UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

DAVID BUCK CULVER,
    Plaintiff,

vs.                      Case No.: 3:19cv3542/MCR/ZCB

N. SANDERS, et al.,
    Defendants.
_____/

## REPORT AND RECOMMENDATION

This is a *pro se* prisoner civil rights case filed under 42 U.S.C. § 1983.

Plaintiff David Buck Culver is an inmate of the Florida Department of Corrections

(FDOC). His complaint names four Defendants: (1) Centurion of Florida, LLC, a

private contractor that provides medical services to FDOC inmates; [1] (2) N. Sanders,

a Doctor of Physical Therapy; (3) S. Melvin, an Advanced Practice Registered

Nurse; and (4) K. Kelly, a Registered Nurse. (Doc. 17 at 1-3). [2] Defendants Sanders,

Melvin, and Kelly are Centurion employees who treated Plaintiff during his

incarceration at Santa Rosa Correctional Institution (SRCI). (*Id*. at 2-3, 12).

---

[1] Centurion is a state actor for § 1983 purposes because it contracted with the state
to provide medical care to prisoners. *See Ancata v. Prison Health Servs., Inc.*, 769
F.2d 700, 703 (11th Cir. 1985).

[2] The Court refers to the document numbers and page numbers assigned by the
Court's electronic filing system.

Plaintiff claims Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. (*Id*. at 13.) He alleges they exacerbated his nerve issues, foot pain, and hemorrhoids by not providing him with a rollator, therapeutic shoes, and a donut cushion. (*Id*. at 7-11). Defendants have moved for summary judgment. (Doc. 41; Docs. 41-1 through 41-4). Plaintiff has responded in opposition, and Defendants have replied. (*See* Docs. 53, 54, 55). For the reasons below, it is recommended that Defendants' motion for summary judgment be **GRANTED**.

## I.    Factual Background[3]

Plaintiff is an inmate at SRCI. (Doc. 17 at 2.) He was using a wheelchair when he arrived due to back problems that included a prior surgery and cauda equina syndrome.[4] (Doc. 41-1 at 11-12; Doc. 54 at 2.) But on May 12, 2018, Plaintiff voluntarily surrendered his wheelchair. (Doc. 41-1 at 11.) When doing so, Plaintiff

---

[3] The facts discussed are drawn from Plaintiff's pleadings and the evidence in the summary judgment record. *See Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986). Where the parties offer conflicting accounts, the Court has "set forth the facts, drawn from the evidence presented, in the light most favorable to the" nonmoving party. *Snow ex rel. Snow v. City of Citronelle*, 420 F.3d 1262, 1265 (11th Cir. 2005). Matters stated as "facts" for summary judgment purposes may, therefore, not ultimately be the true facts. *Montoute v. Carr*, 114 F.3d 181, 182 (11th Cir. 1997).

[4] Cauda equina syndrome is a "group of symptoms and disturbances caused by compression of a bundle of nerves known as the cauda equina." Schmidt's Attorneys' Dictionary of Medicine C-78 (1986).

told the medical staff that God had healed him. (*Id*.). Plaintiff then "briskly walked back to [the] dorm." (*Id*.).

A couple of weeks later, on May 30, 2018, Plaintiff submitted a sick call request complaining of swelling and left leg pain. (Doc. 41-1 at 10). During a consultation on June 6, 2018, Dr. Rodriguez—a nonparty—noted that Plaintiff had pain in his left knee and ankle and residual left lower extremity weakness. (*Id*. at 9). Dr. Rodriguez prescribed a rollator,[5] x-ray, and a physical therapy evaluation. (*Id*. at 9, 13).

On June 14, 2018, Defendant Sanders performed the physical therapy evaluation and gave Plaintiff exercises to perform. (*Id*. at 7-8). After an x-ray on June 20, 2018 (*id*. at 8), Plaintiff had a follow-up with Defendant Sanders on July 3, 2018 (*id*. at 6). During that appointment, Plaintiff could only demonstrate three of the nine exercises he had been previously given. (*Id*. at 6). Defendant Sanders explained the importance of completing the exercises, and he ordered a follow-up appointment. (*Id*.).

After evaluating Plaintiff, Defendant Sanders spoke with Defendant Melvin. (*Id*.). Based on the information provided by Defendant Sanders, Defendant Melvin

---

[5] A rollator is a four-wheeled assistive device that is equipped with handbrakes. Defendants have provided the Court with a photograph of a rollator, as well as a photograph of a two-wheeled walker. (*See* Doc. 41-4 at 3-4).

3

did three things: (1) she temporarily issued Plaintiff a rollator pending further evaluation, (2) she concluded that therapeutic shoes were not clinically indicated, and (3) she directed the medical staff to issue Plaintiff new medical passes. (Doc. 41-1 at 6, 15).

Plaintiff had a follow-up with Defendant Sanders on August 21, 2018. At that time, Defendant Sanders evaluated Plaintiff's complaints of right foot pain. (Doc. 41-1 at 3). Plaintiff also requested therapeutic shoes. (*Id.*). Defendant Sanders noted that Plaintiff's symptoms were consistent with osteoarthritis of the big toe, and he recommended an x-ray. (*Id.*).

On September 19, 2018, Dr. Rodriguez saw Plaintiff. (*Id.* at 2). Plaintiff complained of right foot pain, as well as pain in both buttocks. (*Id.*). Dr. Rodriguez noted Plaintiff's foot had areas of tenderness, limited range of motion, and a mild valgus deformity. (*Id.*). Dr. Rodriguez also noted mild sores on Plaintiff's buttocks. (*Id.*). Dr. Rodriguez recommended a cushion for Plaintiff's rollator seat, shoe arch cushions, and ibuprofen. (*Id.*). On September 25, 2018, Defendant Sanders issued Plaintiff a medical pass for shoe insoles. (*Id.* at 15). Plaintiff saw Dr. Rodriguez again on October 24, 2018. (*Id.* at 1). This time, Plaintiff complained of acid reflux and requested a seat cushion. (*Id.*). Dr. Rodriguez noted the cushion had not been

4

issued before due to supply problems. (*Id*.)  He issued Plaintiff a medical pass for a cushion. (*Id*. at 1, 16).

During a disturbance, another inmate who was "going crazy" threw Plaintiff's rollator. (Doc. 41-1 at 27).  The incident damaged the rollator, which led Plaintiff to seek a replacement. (*Id*.).  After an appointment on January 18, 2019, Plaintiff's rollator was replaced with a two-wheeled walker. (*Id*. at 32).  The next day, Plaintiff requested therapeutic shoes and a new rollator. (*Id*. at 31).  A nurse informed Plaintiff that he would not be issued a rollator, and she told him to discuss the possibility of getting a wheelchair at his upcoming physical therapy appointment. (*Id*. at 32).

On January 28, 2019, Plaintiff submitted a grievance expressing his desire for a rollator. (*Id*. at 26).  Defendant Kelly informed Plaintiff that broken rollators were being replaced with walkers. (*Id*.).  Unsatisfied, Plaintiff filed another grievance the next day demanding a rollator or wheelchair. (*Id*. at 25).  Defendant Kelly reiterated that rollators were being replaced with walkers. (*Id*.).

Plaintiff filed his next grievance on February 18, 2019.  In that grievance, Plaintiff complained that he had not yet received a seat cushion. (*Id*. at 36).  Defendant Kelly responded by stating that the cushions were "on back order." (*Id*.).  Plaintiff then submitted another request for a rollator. (*Id*. at 30).  He was seen by

Defendant Kelly on February 26, 2019, and she noted that Plaintiff was using the walker without difficulty. (*Id.* at 29). Defendant Kelly referred Plaintiff's request to Dr. Rodriguez who concluded that a rollator was not clinically indicated. (*Id.*).

On March 5, 2019, Plaintiff was seen by Defendant Melvin. (Doc. 41-1 at 29). Ever persistent, Plaintiff again requested a rollator. (*Id.*). Defendant Melvin observed that Plaintiff had no difficulty ambulating with the walker, and she rejected his request for a rollator. (*Id.*). Defendant Melvin also concluded that therapeutic shoes were not clinically indicated. (*Id.* at 28). She did, however, authorize Plaintiff to have a low bunk, low tier, no prolonged standing over 15 minutes, no pushing or pulling, and no lifting over 15 pounds. (*Id.*). Plaintiff was next seen by a nurse on March 27, 2019. (*Id.*). He reiterated his request for a rollator, which was denied. (*Id.*). The nurse gave Plaintiff a donut cushion after verifying he had a valid medical pass. (*Id.*).

On April 7, 2019, Plaintiff submitted a formal grievance. (*Id.* at 37). Plaintiff claimed that Defendant Melvin took his cushion on April 5, 2019, even though it had been previously ordered by Dr. Rodriguez. (*Id.*). According to Plaintiff, Defendant Melvin stated that she took away the cushion "because I can." (*Id.*). On April 17, 2019, the Health Services Administrator denied Plaintiff's grievance because he had "no need" for the cushion. (*Id.* at 38).

On April 18, 2019, Plaintiff was evaluated after he "suddenly fell out." (Doc. 17 at 9; Doc. 41-1 at 20-21). Plaintiff stated that he started experiencing pain two days prior. (Doc. 41-1 at 20-21). The nurse observed Plaintiff had a shuffling gait. (*Id.*). The nurse recommended that Plaintiff be seen by a clinician and issued a "lay in" pass. (*Id.* at 21, 15). She further instructed Plaintiff to limit his activity and gave him pain medication. (*Id.*).

On May 3, 2019, Plaintiff returned his walker and signed a refusal for treatment form. (*Id.* at 22). When returning his walker, Plaintiff stated that it hurt his back. (*Id.*). After Plaintiff returned his walker, a nurse noted he was "briskly walking/ambulating towards dorms" with a steady gait and no assistive device. (*Id.* at 19). Plaintiff claims, however, that he walked away with a limp. (Doc. 54 at 4).

Five days after returning his walker, Plaintiff saw Dr. Rodriguez. (Doc. 41-1 at 18-19). Plaintiff reported having pain in his chest and back due to the walker. (*Id.*). Plaintiff also complained of hemorrhoids, right foot pain, and instability walking. (*Id.*). Dr. Rodriguez observed Plaintiff's left pectoral muscle area was tender, but there were no bruises or lymphadenopathy. (*Id.* at 18). Dr. Rodriguez noted a right foot deformity and tender plantar fascia area. (*Id.*). According to Dr. Rodriguez, Plaintiff exhibited a steady gait when walking a short distance without an assistive device, but he had an unsteady gait at longer distances. (*Id.*).

7

Dr. Rodriguez determined that Plaintiff still needed a walker. (*Id.*). He noted that Plaintiff's chest wall pain may have been associated with his use of the walker, and he educated Plaintiff on how to properly use the walker. (*Id.*). Plaintiff asserts Dr. Rodriguez told him that Defendant Melvin could affix rear wheels to the walker. (Doc. 54 at 6, 12). But no such recommendation appears in Dr. Rodriguez's notes. (Doc. 41-1 at 18). With respect to Plaintiff's other complaints (hemorrhoids and foot pain), Dr. Rodriguez recommended new shoe arch cushions/insoles, a donut cushion for ninety days, and suppositories. (*Id.*). Dr. Rodriguez advised Plaintiff to return if his hemorrhoids flared up. (*Id.*).

On May 21, 2019, Plaintiff submitted a grievance complaining he had not received the donut cushion or insoles. (*Id.* at 35). Plaintiff was advised that donut cushions were "on order" and insoles were no longer issued "per revised D.O.C. policy." (*Id.*).

On July 22, 2019, Defendant Melvin evaluated Plaintiff for complaints of back pain. (*Id.* at 17). Defendant Melvin noted Plaintiff gave up his walker on May 3, 2019. (*Id.*). Defendant Melvin observed that Plaintiff had a "steady forward gait" and had "hopped up" on the exam table. (*Id.*). She further noted that he had full range of motion of the left spine and no lower extremity atrophy. (*Id.*). Although Plaintiff had requested a wheelchair, Defendant Melvin determined a wheelchair

8

would be ill-advised because "it will likely lead to further debilitation." (*Id.*).  She referred Plaintiff for an evaluation regarding a cane.  (*Id*. at 23).

Based on Defendant Melvin's referral, Defendant Sanders evaluated Plaintiff for a cane on July 30, 2019.  (Doc. 41-1 at 24).  Plaintiff reported his last fall was April 18, 2019, and he stated that he had no falls since returning the walker nearly three months earlier on May 8, 2019.  (*Id.*).  Yet Plaintiff subsequently told Defendant Sanders he needed a wheelchair due to his falls.  (*Id.*).  After Defendant Sanders pointed out that Plaintiff had denied having a fall since he returned the walker, Plaintiff produced a letter he intended to send to the head of the FDOC complaining about his medical care.  (*Id.*).  Defendant Sanders noted Plaintiff presented with an altered gait and left lower extremity weakness.  (*Id.*).  Defendant Sanders determined Plaintiff was a possible candidate for a cane, but Defendant Sanders agreed with Defendant Melvin that Plaintiff did not need a wheelchair.  (*Id.*).  Indeed, Defendant Sanders opined that a wheelchair "would likely result in decreased hamstring length, decreased lumbar lordosis, and an increase in left lumbar radiculopathy." (*Id.*).  Defendant Sanders also provided Plaintiff with copies of lower back exercises.  (*Id.*).

On September 2, 2019, Plaintiff submitted a grievance complaining that he had not yet received a donut cushion.  (*Id*. at 46).  Dr. Miranda—a nonparty—

9

reviewed the grievance and responded as follows on September 16, 2019: "Review of your medical shows that at this time there is no clinical indication for you to be given a donut cushion." (*Id*. at 45). Plaintiff appealed Dr. Miranda's conclusion. (*Id.* at 44). The appeal was denied because "Dr. Miranda…appropriately addresse[d] the issues." (*Id*. at 43.) Plaintiff then filed this lawsuit.

In support of their motion for summary judgment, Defendants Sanders, Melvin, and Kelly have submitted sworn declarations. (Docs. 41-2, 41-3, & 41-4). Defendants have declared that they were familiar with FDOC policies in place at all relevant times. (Doc. 41-2 at ¶¶ 1, 4; Doc. 41-3 at ¶¶ 1,4; Doc. 41-4 at ¶¶ 1,4). Defendant Kelly has stated that, as a registered nurse, she did not have the authority under FDOC policy to issue or revoke medical passes. (Doc. 41-4 at ¶ 5). Rather, decisions about passes were made by either a physician or a nurse practitioner. (*Id.*). The FDOC permits nurse practitioners, like Defendant Melvin, to exercise independent medical judgment in determining whether inmates meet criteria for prescriptions and passes. (Doc. 41-3 at ¶ 6). This includes the authority to issue passes, as well as the authority to revoke passes that were initially issued by others if the nurse practitioner finds the passes are no longer necessary. (*Id.*). When changes are made to an inmate's passes, they are noted in the medical records. (*Id.*).

According to the declarations, during the relevant time the FDOC instituted a policy of replacing rollators with walkers. (Doc. 41-2 at ¶ 6; Doc. 41-3 at ¶ 7). This policy was made for safety reasons because inmates had used rollators as weapons. (Doc. 41-2 at ¶ 6; Doc. 41-3 at ¶ 7). Defendant Kelly's declaration explains that a two-wheeled walker is functionally equivalent to a rollator because both "devices assist with ambulation and provide a built-in seat that allows the user to rest when necessary." (Doc. 41-4 at ¶ 6). Defendant Sanders has declared that a two-wheeled walker does not need to be completely lifted off the ground; the user may simply tilt and slide the walker forward. (Doc. 41-2 at ¶ 7). At no point is the user required to lift the wheels off the ground. (*Id.*). Defendant Sanders has further declared that, in his medical opinion, "two-wheeled walkers are safer than four-wheeled rollators because, unlike a rollator, a two-wheeled walker does not freely glide while relying only upon a handbrake to stop." (*Id.* at ¶ 8).

## II.    Analysis

### A. Summary judgment standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law."  *Id*. at 248.

At bottom, the summary judgment question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Id*. at 251-52.  When answering that question, courts view the evidence in the light most favorable to the nonmoving party.  *Scott v. Harris*, 550 U.S. 372, 380 (2007).  But the nonmoving party bears the burden of coming forward with sufficient evidence on each element.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  A mere "scintilla" of evidence is insufficient to meet that burden.  *Young v. City of Palm Bay, Fla*., 358 F.3d 859, 860 (11th Cir. 2004).  Likewise, speculation or conjecture cannot create a genuine issue of material fact.  *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005).

## B. Eighth Amendment deliberate indifference standard

To determine what facts are "material" at the summary judgment stage, courts look to the substantive law.  *Anderson*, 477 U.S. at 248.  Completing that task here requires an examination of the law governing Eighth Amendment deliberate indifference claims.  The Eighth Amendment forbids the "inflict[ion]" of "cruel and unusual punishments."  U.S. Const. amend. VIII.  The Supreme Court has held that it is "cruel and unusual punishment" for prison officials to act with "deliberate

indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

That means prison officials are obligated to provide prisoners with "minimally adequate medical care." *Harris v. Thigpen*, 941 F.2d 1495, 1504 (11th Cir. 1991). The deliberate indifference standard is much higher than simple negligence or medical malpractice. *Id*. at 1505. The Eighth Amendment does not require a prisoner's medical care to be "perfect, the best obtainable, or even very good." *Id*. at 1510 (cleaned up). Indeed, the deliberate indifference standard is only met if medical care is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Id*. at 1505-06 (cleaned up). After all, it is "obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

To prevail on a deliberate indifference claim, a plaintiff must satisfy two prongs—one objective, one subjective. *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). Satisfying the objective prong requires a plaintiff to show an "objectively serious medical need." *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1266 (11th Cir. 2020) (cleaned up). A medical need is objectively serious if it "has been diagnosed by a physician as mandating treatment or one that is so

13

obvious that even a lay person would easily recognize the necessity for a doctor's attention—that, if left unattended, poses a substantial risk of serious harm." *Id*. (cleaned up).  To satisfy the subjective prong, a plaintiff must prove that prison officials (1) had "subjective knowledge of a risk of serious harm, (2) they disregarded that risk, and (3) did so in a manner that "was more than mere negligence." *Id*. (cleaned up).  The plaintiff's burden of establishing the objective and subjective prongs is "steep." *Id*.

As explained below, no reasonable jury could conclude that Plaintiff has met that "steep" burden.  Although Defendants have argued (with support from several courts outside the Eleventh Circuit) that Plaintiff's donut cushion claim fails to satisfy the objective prong because hemorrhoids—which Plaintiff says the donut cushion was needed to treat—are not a serious medical need (Doc. 41 at 22-23), it is unnecessary to decide that issue today because Plaintiff has clearly failed to satisfy the subjective prong.  The Court, therefore, will assume that Plaintiff has met the objective prong with respect to his donut cushion claim.  And Defendants have not disputed that Plaintiff's rollator and therapeutic shoe claims satisfy the objective prong.  Thus, the Court will focus its analysis on the subjective prong of the deliberate indifference test for each of Plaintiff's claims.

### 1.  Claim regarding the rollator

Plaintiff first claims that his Eighth Amendment rights were violated because he was given a walker instead of a rollator.  It is hard to tell whether Plaintiff has brought this claim against all Defendants or only Defendant Kelly.  Out of an abundance of caution, the Court will treat the claim as though it has been brought against all Defendants.

As explained above, Plaintiff was initially given a rollator.  The rollator was replaced with a two-wheeled walker after another inmate broke the rollator by throwing it during a disturbance.  Plaintiff claims that the walker was inferior to the rollator, left him unbalanced, and caused him pain.  Plaintiff believes he was denied a rollator because of Defendant Centurion's policy of replacing all rollators with "standard walker[s]," even if not clinically indicated.  (Doc. 17 at 9).

Plaintiff's rollator claim suffers from two fatal flaws.  First, the medical records demonstrate that multiple providers evaluated Plaintiff and determined that a rollator was not clinically indicated.  Defendants Sanders, Melvin, and Kelly—as well as Dr. Rodriguez—all noted that Plaintiff was able to ambulate without difficulty using the walker.  None of them felt that Plaintiff's health condition required a rollator instead of a walker.  In fact, Defendant Sanders has declared that a walker was safer for Plaintiff than a rollator.

This is a classic situation of an inmate disagreeing with his medical providers' judgment. And the Eleventh Circuit has held that a "difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment" does not establish deliberate indifference. *Harris*, 941 F.2d at 1505. Although cases saying the same thing are legion,[6] a particularly apt example is *Ross v. Corizon Med. Servs.*, 700 F. App'x 914 (11th Cir. 2017). There, a prisoner claimed a medical provider acted with deliberate indifference by switching his medication from Neurontin and Tramadol to "stock medications" that the prisoner believed were inferior. *Id*. at 915-16. The Eleventh Circuit affirmed summary judgment for the provider because a disagreement about medication efficacy was "not an appropriate basis for imposing liability." *Id*. at 916. Likewise in *Carter v. Broward Cnty. Sheriff's Dep't*, 558 F. App'x 919, 922 (11th Cir. 2014), the Eleventh Circuit rejected a claim that a physician acted with deliberate indifference by changing the prisoner's diet. These cases reflect the principle that the Constitution

---

[6] *See, e.g.*, *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) ("[T]he question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment is a classic example of a matter for medical judgment and therefore not an appropriate basis for grounding liability under the Eighth Amendment.") (cleaned up); *Harris v. Leder*, 519 F. App'x 590, 596 (11th Cir. 2013) ("Disagreement over a matter of medical judgment does not constitute cruel and unusual punishment."); *Owen v. Corizon Health Inc.*, 703 F. App'x 844, 849 (11th Cir. 2017) (same); *Chatham v. Adcock*, 334 F. App'x 281, 288 (11th Cir. 2009) (same).

"does not guarantee to a prisoner the treatment of his choice." *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988).

The present matter is like *Ross* and *Carter*, except instead of different medications or a different diet, Plaintiff wanted a different assistive device. Notably, this is not a case where medical providers failed to evaluate or treat Plaintiff. The medical records show that Plaintiff was repeatedly evaluated by multiple providers who believed that a two-wheeled walker, not a rollator, was appropriate for his condition. "While [Plaintiff] may disagree with [Defendants] regarding his continued need for the [rollator], he has not presented any evidence to support his allegation that [Defendants were] deliberately indifferent by discontinuing it." *Carter*, 558 F. App'x at 922.

Now for the second fatal flaw in Plaintiff's rollator claim. The record establishes that rollators were being discontinued at SRCI in favor of walkers because rollators were being used as weapons. (Doc. 41-2 at 2; Doc. 41-3 at 2). That was a policy decision made by the FDOC, not Defendants. (*Id.*). In any event, when assessing a deliberate indifference claim, the Court must give "significant weight" to security concerns "inherent in the functioning of a penological institution." *Keohane*, 952 F.3d at 1275 (cleaned up). Prison officials operate under competing demands to provide for the medical needs of prisoners, "while

17

simultaneously assuring the safety and security of inmates." *Id*. (cleaned up).  As such, prison officials are afforded deference "in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Id*.  It is, therefore, unsurprising that courts nationwide have recognized that certain treatments may be curtailed by prison officials due to safety concerns. *See, e.g.*, *Harry v. Wagner*, No. 2:12-cv-643, 2014 WL 2091202, at *6-8 (M.D. Fla. May 19, 2014) (collecting cases from various courts and finding no deliberate indifference where a policy prohibited inmates from having orthopedic boots due to security concerns).

Here, the FDOC enacted a policy that favored walkers over rollators because rollators were being used as weapons.  The legitimacy of that security concern is underscored by the record in this case—Plaintiff's rollator was damaged when another inmate used it in an altercation.   Importantly, Defendants did not deny Plaintiff an assistive device after his rollator was broken.  Instead, they provided him with a two-wheeled walker that all Defendants believed was medically appropriate, and the FDOC believed was less of a security threat. *See Keohane*, 952 F.3d at 1276 (pointing out that inmate was "not…refused care entirely" due to security concerns "but has instead been given a meaningful course of treatment" that addressed the inmate's medical condition).

18

In the final analysis, Defendants' decision to provide Plaintiff a walker instead of a rollator was not "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Harris*, 941 F.2d at 1505-06. There is insufficient evidence "favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249 (cleaned up). Accordingly, Defendants are entitled to summary judgment on Plaintiff's rollator-related deliberate indifference claim.

### 2. Claim regarding therapeutic shoes

Plaintiff also asserts an Eighth Amendment claim against Defendant Sanders based on his alleged failure to provide Plaintiff with therapeutic shoes. (Doc. 17 at ¶¶ 5-6, 14). More specifically, Plaintiff alleges that Defendant Sanders revoked Plaintiff's therapeutic shoe pass and cancelled an order for those shoes. (*Id*. at ¶¶ 6-7). According to Plaintiff, he requires therapeutic shoes to maintain his balance and prevent pain. (*Id*. at ¶ 7, 12, 14). He further claims that Defendant Sanders made the decision without conducting an appropriate exam. (*Id*. at ¶ 5).

Here, yet again, the core of Plaintiff's claim is a disagreement with a provider's medical judgment. Plaintiff's medical records show that Defendant Sanders evaluated Plaintiff on July 3, 2018. Following that evaluation, Defendant Sanders and Defendant Melvin discussed the matter and determined therapeutic

shoes were not clinically indicated. Plaintiff, therefore, was not issued a medical pass for therapeutic shoes. There is no evidence in the medical records to support Plaintiff's contention that Defendant Sanders revoked an existing therapeutic shoe pass. Instead, the medical records show that Defendant Sanders recommended that Plaintiff receive insoles/shoe cushions (not therapeutic shoes) to address his foot pain. They further show that Defendant Sanders examined Plaintiff, recommended x-rays, and scheduled follow-up appointments.

In sum, when Plaintiff complained of foot pain, it was evaluated and addressed. This is not a situation where a prisoner's requests for medical assistance were ignored. *See generally Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989) ("[W]hen a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation."). It is, instead, a situation where a prisoner received care and simply dislikes the treatment plan. Although Plaintiff wanted therapeutic shoes, Defendant Sanders (and other medical providers) determined they were not clinically indicated. Plaintiff's disagreement with that determination is insufficient to survive summary judgment because the "question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment is a classic example of a matter for medical judgment and therefore not an appropriate

basis for grounding liability under the Eighth Amendment." *Adams*, 61 F.3d at 1545.
Therefore, Defendant Sanders is entitled to summary judgment on this claim.

### 3. Claim regarding the donut cushion

Next up is Plaintiff's claim that Defendant Melvin violated the Eighth
Amendment by taking away his donut cushion, even though Dr. Rodriguez had
previously prescribed it. (Doc. 17 at ¶¶ 15-20). As with the rollator and therapeutic
shoe claims, Plaintiff's donut cushion claim involves a disagreement with a
provider's treatment decision.

The medical records show that Dr. Rodriguez issued Plaintiff a pass for a
donut cushion on October 24, 2018. (Doc. 41-1 at 16). Plaintiff subsequently
received the cushion, albeit months later because of supply issues. Plaintiff alleges
Defendant Melvin took away his donut cushion on April 5, 2019.[7]  He saw Dr.
Rodriguez again in May of 2019, and Dr. Rodriguez recommended a donut cushion.
When Plaintiff did not receive the donut cushion, he filed a grievance. The grievance
was reviewed by another physician, Dr. Miranda. Dr. Miranda reviewed Plaintiff's
medical records and concluded "at this time there is no clinical indication for you to

---

[7] Defendant Melvin denies taking the donut cushion, and she points out that there is
no evidence in the medical records showing she took away the cushion. (Doc. 41 at
23-24). Viewing the evidence in the light most favorable to Plaintiff, the Court
proceeds on the assumption that Defendant Melvin took the cushion as Plaintiff
claims.

be given a donut cushion." (Doc. 41-1 at 45). Plaintiff appealed Dr. Miranda's conclusion, and it was upheld. (*Id*. at 43).

The medical records establish, therefore, that Plaintiff does not have a donut cushion because it is not clinically indicated. Dr. Rodriguez may have issued Plaintiff a donut cushion, and another medical provider may have determined Plaintiff did not need a donut cushion. But such a disagreement among providers does not establish deliberate indifference. *Bismark v. Fisher*, 213 F. App'x 892, 897 (11th Cir. 2007).

The *Bismark* decision is instructive on that point. There, one physician prescribed the prisoner orthopedic shoes. *Id*. at 894. Another physician later denied the prisoner orthopedic shoes, concluding they were not clinically indicated. *Id*. The prisoner filed a deliberate indifference claim, and the district court granted summary judgment for the defendants. *Id*. The Eleventh Circuit affirmed and stated: "Nothing in our caselaw would derive a constitutional deprivation from a prison physician's failure to subordinate his own professional judgment to that of another doctor; to the contrary, it is well established that a simple difference in medical opinion does not constitute deliberate indifference." *Id*. at 897 (cleaned up).

The same is true here. Plaintiff's Eighth Amendment rights were not violated because one clinician prescribed a donut cushion and another clinician later found

22

such a cushion unnecessary.  Moreover, the medical records show that the ultimate determination that a donut cushion was not clinically indicated was made by Dr. Miranda—a nonparty to this case.  (Doc. 41-1 at 45).[8]  There is insufficient evidence in the record for a reasonable jury to conclude that the discontinuation of Plaintiff's donut cushion was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Harris*, 941 F.2d at 1505. Accordingly, summary judgment is appropriate on that claim.

### 4.  Claims against Defendant Centurion

Plaintiff is also not entitled to relief from Defendant Centurion.  A private entity that performs state functions cannot be held liable under § 1983 based on the doctrine of *respondeat superior*. *Buckner v. Toro*, 116 F.3d 450, 452-53 (11th Cir. 1997).  Rather, a plaintiff must prove that the entity had a "policy or custom" of

---

[8] It is worth noting that Defendant Melvin states Plaintiff never discussed hemorrhoids with her or otherwise voiced complaints to her about any symptoms associated with hemorrhoids. (Doc. 41-3 at ¶ 5). Plaintiff's medical records show he never made hemorrhoid-related complaints during any of his visits with Defendant Melvin.  Further, Plaintiff's own description of his verbal exchange with Defendant Melvin on the day she took his donut pillow includes no reference to hemorrhoids.  Instead, Plaintiff has stated that he told Defendant Melvin he needed the cushion to help his back.  (Doc. 41-1 at 37).  Thus, to the extent the serious medical need allegedly necessitating the donut cushion was hemorrhoids, there is no evidence to suggest that Defendant Melvin was subjectively aware of a risk of serious harm (i.e., exacerbating Plaintiff's hemorrhoids) and disregarded it by more than mere negligence.

deliberate indifference that led to the violation of his constitutional rights. *Craig v. Floyd Cnty., Ga.*, 643 F.3d 1306, 1310 (11th Cir. 2011). To show a "policy or custom," a plaintiff must "show a persistent and wide-spread practice" caused the alleged injury. *McDowell v. Brown*, 392 F.3d 1283, 1290 (11th Cir. 2004) (cleaned up). Thus, proof of a single incident is insufficient to establish a "policy or custom." *Id.* at 1290.

There is no evidence showing that any "policy or custom" of Defendant Centurion caused Plaintiff's alleged injuries. To the extent that the record establishes that any policies impacted Plaintiff's treatment, the policies belonged to the FDOC and not Defendant Centurion. Furthermore, because as explained above, Plaintiff has failed to produce sufficient evidence from which a reasonable jury could find that his Eighth Amendment rights were violated, there is no basis for holding Defendant Centurion liable. *Miller v. Harget*, 458 F.3d 1251, 1261 (11th Cir. 2006) ("Because [plaintiff] has failed to establish that his constitutional rights were violated, he has necessarily failed to establish the City's liability."); *see also Greenway v. S. Health Partners, Inc.*, 827 F. App'x 952, 962 (11th Cir. 2020) (holding that a plaintiff's failure to show "any underlying [constitutional] violation….is dispositive of his claim for municipal liability"). Accordingly, Defendant Centurion is entitled to summary judgment.

24

### III.    Conclusion

Based on the record, the arguments of the parties, and the applicable law, there is no evidence from which a reasonable jury could find any Defendant was deliberately indifferent to Plaintiff's serious medical needs.  Defendants, therefore, are entitled to summary judgment on all claims.

Accordingly, it is respectfully **RECOMMENDED** that:

1.    Defendants' motion for summary judgment (Doc. 41) be **GRANTED**.

2.    Defendants' motion to dismiss (Doc. 37) be **DENIED as moot**.[9]

3.    The Clerk of Court be directed to enter judgment in favor of Defendants and close this case.

At Pensacola, Florida this 23rd day of June 2022.

/s/ *Zachary C. Bolitho*

Zachary C. Bolitho
United States Magistrate Judge

---

[9] Defendants previously filed a motion to dismiss, but they moved for summary judgment before receiving a ruling on the motion to dismiss.

25

## <u>NOTICE TO THE PARTIES</u>

The district court referred this case to the undersigned for the issuance of preliminary orders and recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.(C); *see also* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b).

Objections to the proposed findings and recommendations set forth above must be filed within fourteen days of the date of this Report and Recommendation.  <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control</u>.  An objecting party must serve a copy of the objections on all other parties.  A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.

26